# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

EQULLA M. BROTHERS, as the )
Personal Representative and )
Administratrix of the Estate of )
Daryl Clinton, Deceased, )
                              )
      Plaintiff, )
                              )
v. )     Case No. CIV-21-418-SLP
                              )
BOARD OF COUNTY )
COMMISSIONERS OF OKLAHOMA )
COUNTY; TOMMIE JOHNSON III, )
in his official capacity as Oklahoma )
County Sheriff; TURNKEY HEALTH )
CLINIC, LLC, an Oklahoma limited )
liability company; DR. KENT KING, )
individually; and JOHN DOES I-X, )
individually, )
                              )
      Defendants. )

## O R D E R

Before the Court are the separately filed Motions to Dismiss [Doc. Nos. 7, 10 and 13] of Defendant Tommie Johnson III, in his Official Capacity as Sheriff of Oklahoma County (Sheriff Johnson); Defendant Dr. Kent King (Dr. King) and Defendant Turn Key Health Clinic, LLC (Turn Key).[1] Defendants challenge the sufficiency of the allegations of Plaintiff's Complaint [Doc. No. 1] alleging claims under 42 U.S.C. § 1983 for violations of the constitutional rights of Daryl Clinton, deceased (Clinton), arising from his pretrial detention at the Oklahoma County Jail (the Jail). Defendants further seek dismissal of

---

[1] The Complaint identifies this Defendant as "Turnkey" but in moving to dismiss the Complaint, Defendant identifies itself as "Turn Key." The Court, therefore, utilizes Defendant's spelling.

Plaintiff's state law claims for negligence and negligence per se.  Plaintiff, Equlla M. Brothers as the Personal Representative and Administratrix of Clinton (Plaintiff), has responded to the Motions. [Doc. Nos. 15, 19 and 20].  Defendant Turn Key has replied. [Doc. No. 21].[2]  The matter is fully briefed and ready for determination.  For the reasons that follow, Defendants' Motions are GRANTED IN PART and DENIED IN PART.

## I.     <u>Introduction</u>

On August 6, 2019, Clinton was received into custody at the Jail as a pretrial detainee.  Four days later, on August 10, 2019, Clinton went into cardiac arrest at the Jail. He was taken to St. Anthony hospital in Oklahoma City.  He was pronounced dead at the hospital in the early morning hours of August 10, 2019.

Plaintiff brings a claim under 42 U.S.C. § 1983 against Defendants Turn Key, Dr. King and John Does I-X, alleging a violation of Clinton's Fourteenth Amendment due process rights due to Defendants' deliberate indifference to his serious medical needs.  *See* Compl., First Cause of Action, ¶¶ 42-52.  She brings this same claim against Sheriff Johnson in his official capacity, based on customs, practices and policies promulgated by Sheriff Johnson.  *See id.*, Second Cause of Action, ¶¶ 53-57.  She also seeks to impose *Monell*[3] liability under § 1983 against Defendant Turn Key for a violation of Clinton's Fourteenth Amendment due process rights, based on Turn Key's customs, policies and procedures.  *Id.*, Third Cause of Action, ¶¶ 58-62.  Similarly, Plaintiff seeks to impose

---

[2] Citations to the parties briefing submissions reference the Court's ECF pagination.

[3] *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658 (1978).

*Monell* liability under § 1983 against the Board of County Commissioners of Oklahoma County (the Board) for the violation of Clinton's Fourteenth Amendment rights. *Id.*, Fourth Cause of Action, ¶¶ 63-70. Finally, Plaintiff brings state law claims for negligence and negligence per se against the Board, Sheriff Johnson, Turn Key and the individual defendants. *Id.*, Fifth Cause of Action, ¶¶ 71-79.[4]

## II.   Governing Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible if the factual content of the allegations allows the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When a complaint alleges "facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation omitted). The question is whether, if the factual allegations are true, it is plausible and not merely possible that the plaintiff may obtain relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

In conducting its review, the court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff.]" *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (internal quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-

---

[4] Plaintiff previously dismissed her claims against Defendant Board of County Commissioners of Oklahoma County. *See* Notice of Voluntary Dismissal Without Prejudice [Doc. No. 16].

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  A pleading that contains "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007)).

## III.   Factual Allegations of the Complaint

Clinton suffered from type 2 diabetes mellitus.  On July 16, 2019, he was admitted to St. Anthony Hospital due to an infection to his left foot from a diabetic ulcer.  Clinton's left leg was amputated below the knee.  On July 23, 2019, Clinton was discharged from the hospital.  Compl., ¶ 13.

On August 5, 2019, approximately two weeks following his hospital discharge, Clinton backed his vehicle into a pole at a gas station parking lot in Oklahoma City.  EMSA and officers from the Oklahoma City Police Department were dispatched to the scene.  *Id.*, ¶ 14.  The accident happened around 8:30 p.m. and Officer Paige Charter arrived at the scene at approximately 8:40 p.m.  EMSA was already there.  *Id.*, ¶¶ 14-15.

Clinton stated that he was unable to move his arms.  He alerted Officer Charter and EMSA to this fact.  *Id.*, ¶¶ 16-18.  At the hospital, Clinton could not sign multiple hospital documents because he was unable to move his arms and hands.  *Id.*, ¶¶ 20-21.  Hospital personnel noted that Clinton was "refusing to use his hands at this time to sign form to have legal blood draw performed."  *Id.*, ¶ 21.

The hospital performed various tests that included a CT scan and a chest x-ray.  The hospital discharged Clinton in the early morning hours of August 6, 2019.  The medical

report from the hospital notes that "Pt appears to be malingering to avoid jail." *Id.*, ¶ 24. The discharge instructions direct that Clinton follow up with his family physician in two days. *Id.*

Clinton arrived at the Jail on the morning of August 6, 2019. *Id.*, ¶ 25. The booking nurse, a Turn Key employee, noted to Dr. King that Clinton had chronic incontinence, was in a wheelchair due to his recent amputation and that the amputation bandage looked filthy and had been neglected. Dr. King placed Clinton in "23 Observation on the 13B Medical floor due to his amputation and need for a wheelchair." *Id.*, ¶ 26. Turn Key did not receive any of the test results or medical treatment recommendations from the hospital except for Clinton to stop using drugs. *Id.*, ¶ 27.

At approximately 10:48 a.m. on August 6, 2019, Clinton told Turn Key staff that he was unable to urinate since 2:45 a.m. and at approximately midnight on August 7, 2019, Clinton told medical personnel that he had not been able to urinate for two days and was experiencing paralysis from the neck down. *Id.*, ¶ 28. Nonetheless, Dr. King medically cleared Clinton from the observation wing of the jail. *Id.*, ¶ 29. Josue Chica (LPN) notified Dr. King that Clinton was still unable to urinate for several days. Dr. King ordered a "straight in/out catheterization." *Id.*, ¶ 30.

On August 9, 2019, a Turn Key employee went to Clinton's cell to administer a fingerstick for his diabetes. Clinton could not physically move from his bed. The employee signed a "waiver" on Clinton's behalf that said that Clinton could not "move from bed to come get fingerstick done." *Id.*, ¶ 32.

In the late evening hours of August 9, 2019 or the early morning hours of August 10, 2019, an officer notified a Turn Key nurse that she needed to check on Clinton because he was asking the officer to feed him due to his inability to move his arms or hands.  The nurse noted that Clinton was "incontinent of stool and urine" and was "refusing to get up." Turn Key employees had to clean Clinton up.  *Id*., ¶ 33.  Dr. King and Turn Key recommended that Clinton receive a psychological consultation.  *Id*., ¶ 34.

When Jail officials and Turn Key personnel returned to Clinton's cell in the early morning hours of August 10, 2019, at around 3:45 a.m., Clinton was on the floor and in cardiac arrest.  *Id*., ¶ 35.  EMSA was dispatched to the jail sometime after 4:00 a.m. but faced delays getting to the 13th floor of the Jail to assist Clinton.  EMSA officer Wood found Clinton unresponsive.  He was not told by Turn Key or Jail employees that Clinton had been suffering from paralysis.  *Id*., ¶ 36.

Clinton was briefly resuscitated while on the way to St. Anthony hospital.  He was pronounced dead at the hospital in the early morning hours of August 10, 2019.  *Id*., ¶¶ 37-38.  The medical examiner listed the probable cause of death as "Blunt Force Trauma of Cervical Spine."  *Id*., ¶ 39.

## IV.   <u>Discussion</u>

### A.   **Claims Against Sheriff Johnson**

Sheriff Johnson moves for dismissal of Plaintiff's § 1983 claim, any claim under the Americans with Disabilities Act (ADA) and Plaintiff's state law claims.  In response, Plaintiff states that she "only alleges an official capacity claim" against Sheriff Johnson under § 1983.  Resp. at 2, n. 1.  Therefore, to the extent the Complaint purports to bring

6

claims against Sheriff Johnson under the ADA or pursuant to state law, the Court deems Plaintiff to have confessed Sheriff Johnson's Motion as to these claims.  Accordingly, the Court's analysis is limited to Plaintiff's § 1983 claim against Sheriff Johnson in his official capacity.

Plaintiff's official capacity claim against Sheriff Johnson is simply another way of pleading an action against Oklahoma County.  *Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir. 2019).  Therefore, Plaintiff's claim is governed by *Monell*.  *Id*.  Plaintiff must first plausibly allege either that one or more of Sheriff Johnson's subordinates violated Clinton's constitutional rights or that the combined acts or omissions of several employees resulted in a violation of his constitutional rights.  *Id*. at 998, 999; *see also Quintana v. Santa Fe Cnty. Bd. of Commr's,* 973 F.3d 1022, 1033-34 (10th Cir. 2020); *Johnson v. Davis Cnty.*, No. CIV-21-4030, 2022 WL 830202 at *3 (10th Cir. Mar. 21, 2022) (unpublished op.) (*Monell* claims "require a plaintiff to establish an underlying constitutional violation" by a specific county employee or, where "systemic failures" are at play, by the combined acts or omissions of several employees).  Plaintiff must also plausibly allege that Sheriff Johnson (1) maintained a policy or custom; (2) that led to the underlying constitutional violation; and (3) that he acted with deliberate indifference.  *Burke*, 935 F.3d at 999.

Sheriff Johnson's Motion focuses on whether Plaintiff has alleged facts sufficient to state a plausible claim that Clinton was denied adequate medical care while detained at the Jail.  Sheriff Johnson argues that Plaintiff's allegations "affirmatively indicate that no one was deliberately indifferent to [Clinton's] medical care."  He argues the allegations establish that Clinton was "initially held in the medical unit where he could be monitored

7

by medical staff"; that during his five days of incarceration he was "treated by Dr. King who continually oversaw the care he received, at least three different nurses, and other medical staff" and that "non-medical detention officers reported to medical staff their observations of [Clinton's] condition and possible need for medical care." Mot. at 13 (citing Compl., ¶¶ 26, 28-30, 32, 33-34). Further, Sheriff Johnson argues that "Plaintiff admits that medical professionals believed [Clinton] to be malingering and even scheduled him for evaluation by a psychiatrist to assess the possible cause of decedent's behavior." *Id*. (citing Compl., ¶¶ 24, 34, 48).

Plaintiff responds that the allegations of the Complaint show that numerous medical officials were aware that Clinton was "experiencing paralysis, needed assistance to eat, and could not even get out of bed to receive diabetes treatment." Resp. at 8 (citing Compl., ¶¶ 26, 28, 31-34, 47-48). Plaintiff identifies "four specific instances where medical personnel had notice of pain and paralysis but never sent any medical care." *Id*. at 8-9 (citing Compl., ¶¶ 26, 28, 32-33). Plaintiff argues that instead of providing medical care, medical personnel mostly ignored the complaints, transferred Clinton out of observation and ordered a psychological evaluation. *Id*. at 8 (citing Compl., ¶¶ 32, 34-35, 48).

"The Fourteenth Amendment prohibits deliberate indifference to a pretrial detainee's serious medical needs." *Crowson v. Wash. Cnty*., 983 F.3d 1166, 1178 (10th Cir. 2020) (internal quotation marks and citation omitted). The two-part Eighth-Amendment inquiry governs. *Id*. Objectively, the deprivation must be sufficiently serious

"to constitute a deprivation of a constitutional dimension"; and subjectively, a prison official must know of and disregard an excessive risk to inmate health or safety.[5]

Sheriff Johnson confines his analysis to the subjective component of a deliberate indifference claim. *See* Mot. at 13.[6]  "A prisoner may satisfy the subjective component by showing that defendant's delay in providing medical treatment caused either unnecessary pain or a worsening of [his] condition. Even a brief delay may be unconstitutional." *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005) (citing cases finding delays of "fifteen minutes," a "few hours" and "several hours" as potentially unconstitutional). As Plaintiff argues, jail and medical personnel have important gatekeeping functions to ensure that a detainee receives proper medical treatment. *See, e.g., Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000) (delaying or refusing to fulfill gatekeeper role may give rise to liability for deliberate indifference).

Here, Plaintiff has stated facts which plausibly support the subjective component of an Eighth Amendment claim. Clinton arrived at the detention center with a recent amputation, a known diabetic condition, and complaints of paralysis, i.e., not being able to

---

[5] Because Clinton was a pretrial detainee, Plaintiff's § 1983 claims for deliberate indifference are governed by the due process clause of the Fourteenth Amendment. *See Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020). "Section 1983 claims made under the Fourteenth Amendment for deliberate indifference are evaluated under the same standard as section 1983 claims made under the Eighth Amendment for deliberate indifference." *Smith v. Allbaugh*, 987 F.3d 905, 910 n. 1 (10th Cir. 2021).

[6] Sheriff Johnson "assumes" that Plaintiff can establish a sufficiently serious medical need. *Id*. Because Sheriff Johnson does not challenge the sufficiency of the allegations of the Complaint with respect to the objective component, the Court need not address it. The Court nonetheless notes that "[a]n inmate's death meets [the objective component] requirement without doubt." *Burke*, 935 F.3d at 994 (quotation omitted).

use his hands and arms.  He required a catheter and assistance eating his food.  He also demonstrated incontinence and had to be cleaned up.  Yet, he was moved from medical observation and set to be evaluated by a psychologist, ostensibly for malingering.  Jail personnel, Dr. King and/or Turn Key medical personnel were aware of Clinton's condition.  At the dismissal stage, Plaintiff has stated facts sufficient to satisfy the subjective component of an Eighth Amendment claim.  *Compare Burke*, 935 F.3d at 1001 (addressing evidence, after jury verdict, and finding sufficient evidence of policy or custom of deficient medical care based on understaffing of jail's medical operation; inadequate training; and failure to timely address or follow-up on inmate's medical issues).

Sheriff Johnson argues even if the facts plausibly allege the violation of Clinton's constitutional rights, dismissal of Plaintiff's § 1983 official capacity claim is proper because Plaintiff fails to allege facts showing that any violation of Clinton's constitutional rights was attributable to an official policy or custom of the Jail.  Sheriff Johnson argues that the Complaint contains only "conclusory legal assertions that an unconstitutional policy or custom existed or that the acts of subordinates were ratified by those in a position of policy-making authority."  Mot. at 16 (citing Compl., ¶¶ 55-56).

Plaintiff responds that the allegations in paragraph 55 of the Complaint adequately allege a policy or custom and are not merely conclusory.  Paragraph 55 identifies the policies to include: "understaffing medical personnel to the Jail; failure to implement appropriate policies for caring and providing treatment to inmates in locked cells (for example, Clinton could not receive diabetes treatment in his cell because he was paralyzed); failure to receive medical documents and files from hospitals such as St.

Anthony hospital that could help ensure proper medical treatment for detainees; and improper protocol for clearing detainees from observation when suffering from serious medical needs." Compl., ¶ 55.

Plaintiff alleges facts to show a causal connection between Clinton's death and these policies. Clinton did not receive any evaluation to determine whether his complaints of paralysis necessitated further medical treatment. Clinton did not receive treatment for his diabetes. And Clinton suffered from cardiac arrest despite knowledge by Jail and medical personnel that he had been complaining of paralysis, could not feed himself, required a catheter and had to be cleaned up due to incontinence. The Court finds the Complaint plausibly alleges facts sufficient to show an unconstitutional policy or custom was causally connected to the violation of Clinton's constitutional rights. *See Quintana*, 973 F.3d at 1034 (addressing sufficiency of allegations of § 1983 denial of medical care claim in light of "low bar for surviving a motion to dismiss" and finding plaintiffs "alleged enough to explore their *Monell* claim in the discovery process").

For these reasons, Sheriff Johnson's Motion to Dismiss is DENIED as to Plaintiff's claims alleged in the First and Second Cause of Action of the Complaint and GRANTED as to Plaintiff's state-law claims alleged in the Fifth Cause of Action as well as any purported claim brought under the ADA.

### B.    Claims Against Turn Key

Turn Key moves for dismissal of Plaintiff's state law claims. In response, Plaintiff concedes that dismissal of the state-law claims against Turn Key is proper. *See* Resp. [Doc. No. 20] at 3 n. 1 ("[P]rivate entities such as Turn Key are immune from tort claims under

the Oklahoma Governmental Tort Claims Act" and, therefore, "Plaintiff's sole theory of liability against Turn Key must proceed under *Monell*."). Thus, Turn Key's Motion is granted as to Plaintiff's state-law claims.

Turn Key further moves for dismissal of Plaintiff's § 1983 claim as raised in the Complaint as Plaintiff's Third Cause of Action. Compl., ¶¶ 58-62. Turn Key argues that the Complaint fails to allege facts supporting any inference that any of the Turn Key providers "were aware of Mr. Clinton's alleged paralysis or that Mr. Clinton was suffering from a serious medical condition." Mot. at 16. Thus, Turn Key argues Plaintiff has not alleged facts sufficient to establish the subjective component of a deliberate indifference claim. *Id.*

Turn Key further argues that there is no vicarious liability under § 1983 and, therefore, Plaintiff cannot rely on the acts of employees or agents of Turn Key to support any claim against it. Finally, Turn Key argues Plaintiff has not alleged facts sufficient to establish any policy or custom of Turn Key resulted in the deprivation of Clinton's constitutional rights.

In response, Plaintiff argues that she does not seek to impose liability on Turn Key under a theory of vicarious liability but, as expressly pleaded in the Complaint, under *Monell*.[7] Plaintiff contends that she has sufficiently alleged facts showing that Turn Key

---

[7] Even so, Plaintiff argues several factual allegations establish that Turn Key agents were deliberately indifferent to Clinton's serious medical needs. *See* Resp. at 6-7 (citing Compl., ¶¶ 26, 28, 30, 32, 34-35, 47).

created, implemented and maintained policies and customs that violated Clinton's constitutional rights.

The Court finds Plaintiff has alleged facts sufficient to state a plausible claim for *Monell* liability. The Court has identified above the requisite elements of § 1983 liability under *Monell*. The Tenth Circuit has extended *Monell* to claims brought against a private entity, like Turn Key, working on a county's behalf to perform a county function. *See Dubbs v. Head Start, Inc*. 336 F.3d 1194, 1216 (10th Cir. 2003) ("Although the Supreme Court's interpretation of § 1983 in *Monell* applied to municipal governments and not to private entities acting under color of state law, caselaw from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants.").

Turn Key fails to address elements governing a § 1983 claim under *Monell*. Instead, Turn Key argues dismissal is proper because it has no "final decision-making authority for the Oklahoma County Jail." Mot. at 18 (citing *Pembaur v. City of Cincinnatti*, 475 U.S. 469 (1986)). As Plaintiff responds, "[t]his argument is incorrect because courts uniformly recognize that *Pembaur* is an alternative theory of liability to *Monell*." Resp. at 10.

The Court agrees with Plaintiff. The "final decision-making authority" "form of establishing municipal liability is *in addition to* the settled method of showing that the entity's policy was the moving force behind the denial of a constitutional right. The distinction has been cited in countless cases, and it is clear that a municipal liability claim may be founded on *either* basis." *Lee v. Turn Key Health Clinics*, LLC, No. 19-CV-00318-GFK-JFJ, 2020 WL 959243 at *6 n. 6 (N.D. Okla. Feb. 27, 2020) (quoting *Sanders v. Glanz*, 138 F. Supp.3d 1248, 1256 (N.D. Okla. 2015) (emphasis in original)).

13

Here, Plaintiff has alleged plausible allegations of Turn Key's policies, customs or practices that resulted in deliberate indifference to Clinton's serious medical needs. Plaintiff has alleged that Turn Key contracted with the Jail to provide medical staffing, supervision and care to detainees and that it was responsible for providing care to Clinton. Compl., ¶ 4.  Plaintiff further alleges Turn Key was responsible for "creating implementing, and maintaining policies and procedures governing the medical care of inmates at the Jail" and for "training and supervising its medical personnel at all relevant times." *Id.*, ¶ 5. Plaintiff also alleges that Turn Key "did not have adequate policies and procedures to ensure that Turn Key received all medical records, specifically the CT scans and note [from St. Anthony hospital] recommending follow-up medical attention in two days." *Id.*, ¶ 27. Additionally, Plaintiff alleges that by August 10, 2019, it was "plainly obvious, even to a layperson, that Clinton had serious and emergent health needs" but that Turn Key "merely recommended Clinton receive a psychological consultation" and "disregarded Clinton's symptoms of and complaints of paralysis" *Id.*, ¶¶ 34, 35.  And Plaintiff alleges that Turn Key did not notify EMSA personnel attending to Clinton at the time of his cardiac arrest that Clinton "was experiencing paralysis in his upper body." *Id.*, ¶ 36.

Additionally, Plaintiff has set forth examples of Turn Key's policies, customs and practices that caused the constitutional violations.  Those examples include a failure to obtain necessary medical records, the signing of a waiver of treatment when Clinton was physically unable to move from his bed, and the failure to deliver healthcare despite Clinton's obvious symptoms that medical evaluation and/or treatment was needed.  *See* Resp. at 12 (citing Compl., ¶¶ 32, 34, 35, 48, 61, 62).

14

In sum, the Court finds Plaintiff's allegations against Turn Key plausibly state a claim for relief under *Monell*.   Because Plaintiff expressly states she does not assert any vicarious liability theory, the Court need not address Turn Key's arguments regarding the same.  Finally, as set forth, the Court rejects Turn Key's argument that it cannot be held liable because it has no final decision-making authority.

Turn Key further seeks dismissal of Plaintiff's "claim" for punitive damages.  Mot. at 21.  Whether a particular remedy, such as punitive damages, is "recoverable in a case is not a proper subject for adjudication in a Rule 12(b)(6) motion, as the prayer for relief is not a part of the cause of action." *See Douglas v. Miller*, 864 F.Supp.2d 1205, 1220 (W.D. Okla. Mar. 30, 2012) (citations omitted); *see also Cassidy v. Millers Cas. Ins. Co. of Texas*, 1 F. Supp. 2d 1200, 1214 (D. Colo. 1998). ("[T]he only issue on a motion dismiss is whether the claim as stated would give the plaintiff a right to any relief, rather than to the particular relief demanded."); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1255 (3d ed. 2004) ("The sufficiency of a pleading is tested by the Rule 8(a)(2) statement of the claim for relief[,] and the demand for judgment is not considered part of the claim for that purpose, as numerous cases have held.").  Accordingly, Turn Key's Motion is denied as to the issue of punitive damages; dismissing Plaintiff's request for a particular remedy is inappropriate at this stage of the proceedings.

### C.      Claims Against Dr. King

As with Plaintiff's state-law claims against Turn Key, Plaintiff concedes that dismissal of the state-law claims is proper because "Dr. King is immune under the Oklahoma Governmental Tort Claims Act."  Resp. at 2, n. 1.  Based on Plaintiff's

concession, therefore, Dr. King's Motion is granted as to Plaintiff's state-law claims.  The Court, therefore, addresses only whether dismissal of Plaintiff's § 1983 claim against Dr. King is proper.

Like Defendants Sheriff Johnson and Turn Key, Dr. King focuses on the sufficiency of the allegations with respect to the subjective component of a claim of deliberate indifference to serious medical needs.  Dr. King alleges that Plaintiff has failed to allege facts sufficient to show that he knew of and disregarded a substantial risk of serious harm to Clinton.  Instead, Dr. King argues that the allegations, at best, show a mere difference in opinion as to the proper medical treatment provided.  *See, e.g., Sealock*, 218 F.3d at 1211 (recognizing that where the alleged conduct is that a medical professional failed to treat a serious medical condition properly, "the medical professional has available the defense that he was merely negligent in diagnosing or treating the medical condition, rather than deliberately indifferent").

Plaintiff alleges Dr. King was, in part, "responsible for overseeing Clinton's health and well-being and for ensuring that Clinton received appropriate medical care while detained at the Jail."  Compl., ¶ 5.   Plaintiff further alleges Dr. King had notice upon Clinton's arrival to the Jail that "Clinton was recently involved in a collision, had complained of paralysis, was a recent amputee, and had type 2 diabetes."  *Id*., ¶ 26. Notwithstanding this notice, Dr. King "cleared Clinton from the observation wing of the Jail."  *Id*., ¶ 29.  Dr. King then was advised Clinton had not been able to urinate for several days and ordered a catheterization.  *Id*., ¶ 30.  Despite obvious signs that Clinton needed further medical care, Dr. King did not send Clinton to the hospital or for emergent care but

instead recommended Clinton receive a psychological consultation.  *Id*., ¶ 34.  Dr. King further "completely disregarded Clinton's symptoms of and complaints of paralysis (as well as his other serious medical needs such as diabetes and leg amputation) over the span of several days."  *Id*., ¶ 35; *see also id*., ¶ 47.

Plaintiff has alleged plausible allegations to support a claim of deliberate indifference against Dr. King.  Plaintiff alleges facts showing more than a mere difference in opinion about the medical treatment rendered to Clinton.  Instead, Plaintiff has alleged facts from which a reasonable inference could be drawn that Dr. King failed in his gatekeeping duties to Clinton.  At this stage in the proceedings, Plaintiff's allegations are sufficient.

Dr. King also moves for dismissal of Plaintiff's "claim" for punitive damages.  The Court finds dismissal inappropriate, for the reasons set forth above in relation to Defendant Turn Key's same argument.

## V.   <u>Conclusion</u>

IT IS THEREFORE ORDERED as follows:

(1)     Defendant Sheriff Tommie Johnson III's Motion to Dismiss [Doc. No. 7] is GRANTED IN PART and DENIED IN PART.  To the extent Plaintiff's Complaint purports to bring state-law claims or claims under the Americans with Disability against Defendant Johnson, those claims are dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

(2)     Defendant Turn Key Health Clinic LLC's Motion to Dismiss [Doc. No. 13] is GRANTED IN PART and DENIED IN PART.  Plaintiff's state-law claims against

Defendant Turn Key are dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

(3)     Defendant Dr. Kent King's Motion to Dismiss [Doc. No. 10] is GRANTED IN PART and DENIED IN PART.  Plaintiff's state-law claims against Defendant Dr. King are dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED this 30th day of March, 2022.

**SCOTT L. PALK**
**UNITED STATES DISTRICT JUDGE**