IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RAMIRO RAMIREZ, an individual, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KAY COUNTY JUSTICE FACILITIES ) <br> AUTHORITY, a public trust doing ) <br> business as Kay County Detention ) <br> Center; TURN KEY HEALTH ) <br> CLINICS LLC, a domestic limited ) <br> liability company; CALLIE GRAY, ) <br> individually; JOSEPHINE OTOO, ) <br> individually; DON JONES, individually ) <br> and in his official capacity as Director ) <br> of the Kay County Detention Center; ) <br> FNU LNU John, Joe & Sergeant Doe, ) <br> individually, as yet unidentified ) <br> Detention Officers, ) <br> ) <br> Defendants. ) | Case No. CIV-21-00971-JD |

## **ORDER**

Before the Court is Callie Gray ("Gray"), Josephine Otoo ("Otoo"), and Turn Key Health Clinics, LLC's ("Turn Key") (collectively "Defendants") Joint Motion to Dismiss ("Motion"). [Doc. No. 40]. The Motion seeks dismissal of the claims against them in Plaintiff Ramiro Ramirez's ("Ramirez") Amended Complaint. [Doc. No. 35].[1] Ramirez responded in opposition [Doc. No. 41], and Defendants replied [Doc. No. 42]. For the following reasons, the Court dismisses Ramirez's Eighth Amendment claims against

---

[1] The Amended Complaint is accompanied by exhibits 1 through 11. *See* [Doc. Nos. 35-1–35-6 (exhibits 1–6), 36-1–36-5 (exhibits 7–11)].

1

Gray and Otoo under Federal Rule of Civil Procedure 12(b)(6) and otherwise denies the Motion.

I.  **BACKGROUND**[2]

At the time of the events giving rise to this action, Ramirez was in custody at the Kay County Detention Center ("KCDC"). Turn Key contracted with KCDC and was responsible for providing all medical services to the individuals detained there. Turn Key was the authorized decision-maker for all medical services. Turn Key employed Gray and Otoo as nurses.

While detained, Ramirez complained to KCDC officers that he was experiencing loss of vision, chest pain, left sided weakness, headache, and inability to physically stand or walk. KCDC officers took Ramirez to the nurse's station where he was evaluated by Gray. Ramirez told Gray that he was experiencing chest pain, pain down his left arm, and left sided weakness. Gray had access to his records which reflected that he had very high blood pressure and glucose levels. Gray phoned Otoo who was working remotely. After listening to Gray and reviewing Ramirez's records, Otoo told Gray to give him nitroglycerin and call back if needed.

Ramirez took the nitroglycerin, and his chest pain somewhat improved. He returned to his cell. Then, his condition began to worsen with his left arm drawn and contracted, and he was transported to the emergency room. At the emergency room, the doctor determined Ramirez had a stroke but was outside the window for stroke

---

[2] The Court recounts only the alleged facts relevant to its analysis and those needed to provide context.

intervention.

Ramirez filed this suit and brought claims against Defendants for negligence and violations of the Eighth Amendment under 42 U.S.C. § 1983.

## II.    LEGAL STANDARD

"Rule 12(b)(6) dismissal 'is appropriate if the complaint alone is legally insufficient to state a claim.'" *Serna v. Denver Police Dep't*, 58 F.4th 1167, 1169 (10th Cir. 2023) (quoting *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017)). The Court must "view the allegations and all reasonable inferences in favor of the plaintiffs." *Hubbard v. Okla. ex rel. Okla. Dep't of Hum. Servs.*, 759 F. App'x 693, 696 (10th Cir. 2018) (unpublished).

In considering a motion to dismiss under Rule 12(b)(6), the inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Woodard*, 912 F.3d 1278, 1299 (10th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678, 679.

### III. ANALYSIS

#### A. Ramirez has failed to allege plausible Eighth Amendment claims against Gray and Otoo.

Ramirez argues that Gray and Otoo were deliberately indifferent to his serious medical needs. He also says that whether Gray and Otoo were subjectively aware of an excessive risk to his health "is not a question to be answered in a motion to dismiss." [Doc. No. 41 at 15].

"[D]eliberate indifference to serious medical needs of prisoners constitutes" an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "To establish an Eighth Amendment claim based on inadequate medical care, the prisoner must prove both an objective component and a subjective component." *Redmond v. Crowther*, 882 F.3d 927, 939 (10th Cir. 2018). "Under the objective inquiry, the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension. In addition, under the subjective inquiry, the prison official must have a 'sufficiently culpable state of mind.'" *Self v. Crum*, 439 F.3d 1227, 1230–31 (10th Cir. 2006) (citations omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Here, Defendants concede that Ramirez has plausibly alleged the objective component, so the Court focuses its analysis on the subjective component.

For the subjective component, officials must know of and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "In addition, [defendants] who

4

actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A [defendant's] duty under the Eighth Amendment is to ensure 'reasonable safety'. . . ." *Id.* at 844 (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). More specifically, "the subjective component can be satisfied under two theories: failure to properly treat a serious medical condition ('failure to properly treat theory') or as a gatekeeper who prevents an inmate from receiving treatment or denies access to someone capable of evaluating the inmate's need for treatment ('gatekeeper theory')." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023).

For the failure to properly treat theory, courts consider whether "[t]he patient's medical issue obviously required 'additional medical care and referral.'" *Id.* at 1138 (quoting *Self*, 439 F.3d at 1232). For example, if "a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition, *e.g.*, a gangrenous hand or a serious laceration," the subjective component of the failure to properly treat theory would be met. *Self*, 439 F.3d at 1232. However, "'a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation . . . .'" *Id.* at 1231 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1277 n.7 (10th Cir. 2001)).

For the gatekeeper theory, courts consider whether the medical professional has "fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Lucas*, 58 F.4th at 1139. "'[A] good faith effort to diagnose and treat [the inmate's] medical

5

condition'" will satisfy this obligation; "'completely refus[ing] to assess or diagnose' the potential . . . emergency" will not. *Self*, 439 F.3d at 1232 (second brackets in *Self* and first and third brackets and ellipses added) (quoting *Mata v. Saiz*, 427 F.3d 745, 761, 758 (10th Cir. 2005)).

When Ramirez was brought to Gray, she recorded his symptoms. She then called Otoo and relayed Ramirez's condition. Both nurses were aware that Ramirez had a history of cardiac disease and diabetes, and that he was currently complaining of pain and weakness in his chest and on his left side. Otoo told Gray to give Ramirez nitroglycerin. This alleged conduct does not meet the requirements for either the failure to properly treat or gatekeeper theory. The Tenth Circuit has held that "the subjective component was not met where a prison nurse misdiagnosed an inmate's chest pains as the flu, and failed to recognize symptoms suggesting an impending heart attack." *Id.* at 1231 (citing *Sealock v. Colorado*, 218 F.3d 1205, 1208, 1211, 1212 n.7 (10th Cir. 2000)). Similarly here, although the nurses may have misdiagnosed Ramirez's condition, that is not enough to show they consciously disregarded an obvious and substantial risk to Ramirez. Their decision to give him nitroglycerin for these symptoms was not unreasonable. Further, the Amended Complaint includes no allegations suggesting Gray and Otoo completely refused to assess or diagnose Ramirez. Gray called Otoo about Ramirez's condition. Otoo prescribed treatment and told Gray to call back as needed.

Therefore, the Court concludes that Ramirez has failed to state plausible Eighth Amendment claims against Gray and Otoo. The Court dismisses these claims against both nurses without prejudice.

### B. Ramirez has plausibly alleged an Eighth Amendment claim against Turn Key.[3]

Turn Key argues that Ramirez failed to plead any factual basis sufficient to show that its customs or practices caused an alleged constitutional deprivation. It contends that Ramirez's constitutional claims should be dismissed against Turn Key because he only provides unparticularized allegations.

"[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis omitted) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). "[A] plaintiff seeking to impose liability on a municipality under § 1983" must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). An entity is not liable under § 1983 "unless deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Id.* at 400 (emphasis omitted).

Municipal liability may exist when there is "a systemic failure of medical policies and procedures." *Lucas*, 58 F.4th at 1144. Systemic failure can serve as the underlying constitutional violation for purposes of *Monell* liability. *See id.* ("[I]t was error for the district court to not consider a systemic failure as the underlying constitutional

---

[3] Defendants do not dispute that Turn Key is a state actor for purposes of § 1983.

violation . . . .").[4]

According to the Amended Complaint, Turn Key is the final decision-making authority with respect to all medical services provided by KCDC. It has established customs such as "failing to adequately assess and treat . . . obvious or known symptoms of emergent and life-threatening conditions of KCDC inmates requiring offsite medical care" and "avoiding emergency transport and offsite medical care, especially for serious and expensive conditions." [Doc. No. 35 at 37, 39]. Turn Key also "fails to provide adequate staffing to perform all the tasks it contracts to provide" and "fail[s] to train and supervise medical and KCDC jail staff in the assessment and care of inmates with complex or serious medical needs." [Id. at 37, 38]. These policies and customs represent systemic failures that have resulted in multiple inmate deaths and injuries.[5] They also caused Ramirez's injuries which include "temporary and permanent physical disability, pain, [and] suffering." [Id. at 9].

These allegations, taken as true, show that there was a systemic failure, of Turn

---

[4] Since the Court concludes that Ramirez has not stated plausible constitutional claims against Gray and Otoo, its *Monell* analysis is premised on whether he has alleged there was an underlying constitutional violation via systemic failure of medical policies and procedures.

[5] Specifically, Ramirez alleges that Turn Key's customs and failures have caused (1) an inmate, who was "left in a restraint chair for over 48 hours," to die; (2) an inmate to be found "naked, unconscious, and covered in his own feces after having experienced seizure activity that went untreated and unaddressed;" (3) an inmate's death "from a blood clot in his lungs," which despite repeated complaints, "[was] disregarded by responsible staff;" (4) an inmate to become "permanently paralyzed after jail staff failed to provide him treatment after repeated complaints of pain in his back and chest;" and (5) an inmate to die since the medical staff did not provide treatment "for over two weeks despite clear indication of his serious medical condition." [Id. at 38].

8

Key policies or customs,[6] that caused Ramirez's injuries, to which Turn Key was deliberately indifferent. *See Brown*, 520 U.S. at 407–08 ("[T]he existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training . . . is the 'moving force' behind the plaintiff's injury."); *City of Canton*, 489 U.S. at 390 ("[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.").

Thus, Ramirez has plausibly alleged a constitutional violation and the "three elements" needed "to succeed on a *Monell* claim: '(1) an official policy or custom, (2) causation, and (3) deliberate indifference.'" *Buchanan v. Turn Key Health Clinics, LLC*, No. 22-7029, 2023 WL 6997404, at *7 (10th Cir. Oct. 24, 2023) (unpublished) (quoting *Lucas*, 58 F.4th at 1145). The Court therefore does not dismiss the Eighth Amendment claim against Turn Key.

---

[6] "Any of the following constitute an official policy: '(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.'" *Lucas*, 58 F.4th at 1145 (quoting *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020)). Ramirez alleges facts that go to several of these bases. However, at this stage, the Court does not need to determine which precise theory would be successful.

### C.  The Court declines to dismiss Ramirez's negligence claims against Defendants.

The parties dispute whether Defendants are entitled to immunity under the Oklahoma Governmental Tort Claims Act ("OGTCA"). Okla. Stat. tit. 51, § 151, *et seq*. Defendants argue that the Oklahoma Supreme Court's opinion in *Barrios* "squarely addressed" this issue, and that they are entitled to immunity as a result. *Barrios v. Haskell Cnty. Pub. Facilities Auth.*, 432 P.3d 233, 241 (Okla. 2018). Ramirez argues that Defendants are not entitled to immunity because they are not covered under the OGTCA's definition of "employee."

"An employee of the state or its political subdivision who operates or maintains a jail or correctional facility is exempt from state tort liability under the OGTCA." *Lucas*, 58 F.4th at 1147 (citing Okla. Stat. tit. 51, § 155(25)). The term "employee" includes "licensed medical professionals under contract with city, county, or state entities who provide medical care to inmates or detainees in the custody or control of law enforcement agencies." Okla. Stat. tit. 51, § 152(7).

"In a footnote in *Barrios v. Haskell County Public Facilities Authority*, 432 P.3d 233, 236 n.5 (Okla. 2018), the Oklahoma Supreme Court stated, 'Generally speaking, the staff of a healthcare contractor at a jail are "employees" who are entitled to tort immunity under the [O]GTCA.'" *Bond v. Regalado*, No. 22-5065, 2023 WL 7014047, at *3 (10th Cir. Oct. 25, 2023) (unpublished). However, district courts have been instructed that, on a motion to dismiss, it is "premature" to determine whether healthcare contractors and prison nurses "[are] entitled to immunity based on *Barrios*'s non-binding legal

10

assumption, which was decidedly not an express statement of law." *Lucas*, 58 F.4th at 1148. Instead, "the proper route" for district courts to take "is to determine the OGTCA's applicability to private corporations — and their employees — that contract with the state to provide medical services at the summary judgment stage if the factual record is sufficiently developed and the facts are uncontroverted." *Id.*

Thus, the Court determines that Ramirez's allegations do not conclusively establish that Defendants are entitled to immunity under the OGTCA. Based on the Tenth Circuit's instruction in *Lucas*, the Court declines to dismiss the negligence claims against Defendants on this ground at the pleading stage.

## IV.     CONCLUSION

For these reasons, the Court GRANTS Defendants' Motion to Dismiss [Doc. No. 40] as to the Eighth Amendment claims against Gray and Otoo and DENIES the Motion as to the remaining claims. The Court DISMISSES the Eighth Amendment claims against Gray and Otoo without prejudice.

IT IS SO ORDERED this 28th day of May 2024.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE