IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RAMIRO RAMIREZ, an individual, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KAY COUNTY JUSTICE FACILITIES )<br>AUTHORITY, a public trust doing )<br>business as Kay County Detention )<br>Center; TURN KEY HEALTH )<br>CLINICS LLC, a domestic limited )<br>liability company; CALLIE GRAY, )<br>individually; JOSEPHINE OTOO, )<br>individually; DON JONES, in his )<br>official capacity as Director of the )<br>Kay County Detention Center, )<br>)<br>Defendants. ) | Case No. CIV-21-00971-JD |

## ORDER

Before the Court are multiple motions regarding discovery disputes between Plaintiff Ramiro Ramirez and the defendants. First, the Medical Defendants—Turn Key Health Clinics, LLC, d/b/a TK Health, Callie Gray, and Josephine Otoo—filed a Motion for Leave to Amend Their Expert Disclosures and Final Witness List. [Doc. No. 115]. The Court set this motion for expedited briefing and ordered that no replies would be permitted. [Doc. No. 116]. Plaintiff filed a response. [Doc. No. 117]. The Medical Defendants filed a Motion for Leave to File a Reply [Doc. No. 118], and Plaintiff filed a response in opposition [Doc. No. 119]. Second, Defendants Kay County Justice Facilities Authority d/b/a Kay County Detention Center ("KCDC") and Don Jones, in his official capacity, filed a Motion to Amend Witness List and Exhibit List. [Doc. No. 120].

Plaintiff filed a response [Doc. No. 122] to which Defendants KCDC and Jones replied [Doc. No. 127]. Third, all defendants jointly filed a Motion to Quash Plaintiff's Subpoenas Duces Tecum. [Doc. No. 121]. Plaintiff filed a Response in Opposition [Doc. No. 124], and the defendants replied [Doc. No. 136]. Plaintiff then filed a Motion Seeking Leave to File Supplemental Brief to Defendants' Joint Reply. [Doc. No. 139]. Lastly, Plaintiff filed an Opposed Motion to Extend Remaining Deadlines. [Doc. No. 123]. The Court set this motion for expedited briefing and again ordered that no replies would be permitted. [Doc. No. 130]. The Medical Defendants and Defendants KCDC and Jones filed separate responses. [Doc. Nos. 140, 141]. Plaintiff moved for leave to file a reply brief. [Doc. No. 142]. Upon consideration of the relevant briefing and applicable legal standards, the Court rules on these motions as follows.

## I.     BACKGROUND

This case arises from Plaintiff's claims that KCDC and its medical staff were both negligent and deliberately indifferent to Plaintiff's serious medical needs by failing to provide him adequate medical care after he had a stroke while in custody. The Court entered a Scheduling Order in this case on July 19, 2024. [Doc. No. 54]. Based on the parties' representation that they anticipated discovery to be completed within eight months [Doc. No. 53 at 4], the Scheduling Order set a deadline of March 10, 2025, for discovery to be completed [Doc. No. 54 ¶ 6]. In December 2024, the parties jointly moved to extend all unexpired deadlines by 60 days. [Doc. No. 69]. Concluding that the parties only showed good cause to extend their discovery-related deadlines, the Court extended the parties' deadlines to file expert disclosures, exchange expert reports, and file

final witness and exhibit lists by 60 days, and the Court extended the discovery deadline by 45 days, or until April 24, 2025. [Doc. Nos. 70, 71]. The Court later granted an extension for defendants to file dispositive and *Daubert* motions based on conflicts with scheduling the deposition of a key expert witness. [Doc. Nos. 89, 98].

On April 29, 2025, the Court granted an unopposed motion by Defendants KCDC and Jones to extend the discovery deadline by an additional 30 days. [Doc. No. 112]. The motion explained that while defense counsel was preparing a motion for summary judgment, he realized that one of defendants' exhibits—a control center log—had inadvertently been cut off. [Doc. No. 110 ¶¶ 6, 8]. The defendants obtained a complete copy, which revealed "that a previously unidentified Detention Officer, Janet Harrington, brought Plaintiff back to D pod, his cell, after his relevant meeting and examination by Defendant Nurses, Callie Gray and Josephine Otoo, early on October 21, 2020, at 1:38 a.m." *Id.* ¶¶ 9–11. Officer Harrington had not previously been disclosed as a potential witness. *Id.* ¶ 12. The Court extended the discovery deadline to June 3, 2025, "to allow the parties an opportunity to locate, contact, and take the deposition of Janet Harrington." [Doc. No. 112 at 2]. The Court also allowed the parties to re-open the depositions of two jail administrative staff members, Wade Locke and Chuck Creppel, "for the sole purpose of inquiring about the newly produced jail logs or about Harrington." *Id.* The Court issued a Second Amended Scheduling Order and Modified Second Amended Scheduling Order reflecting this updated discovery deadline. [Doc. Nos. 113, 114].

Defendants now seek to modify the scheduling order by amending their final lists of witnesses, final exhibit lists, and expert disclosures after the deadline to file these lists

3

has passed. *See* [Doc. Nos. 115, 120]. Plaintiff seeks to amend the scheduling order by extending all remaining deadlines—including the discovery deadline and the deadline to file dispositive and *Daubert* motions—by 60 days. [Doc. No. 123].

## II.  <u>LEGAL STANDARD</u>

Once the Court has issued a scheduling order, that schedule "may be modified only for good cause and with the judge's consent."[1] Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (alteration in original) (citation omitted). Moreover, the Court and the parties must construe, administer, and employ the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

The good cause standard "obligates the moving party to 'provide an adequate explanation for any delay.'" *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020

---

[1] In his responses to Defendants' motions to modify the scheduling order, Plaintiff cites Federal Rule of Civil Procedure 6(b)(1)(B) and a prior order of the Court in a different case to suggest that the defendants must also show that their failure to act before the deadline was the result of excusable neglect. [Doc. No. 117 at 7–8; Doc. No. 122 at 12–13]. As one leading treatise notes, "[s]ome courts have applied Rule 6(b)(1)(B)'s excusable neglect standard in cases where parties have missed deadlines set by the scheduling order," but "[t]he better view is that requests to amend the scheduling order should be analyzed under Rule 16(b)'s good cause standard only." 1 Steven S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary* § 16:33 (updated June 2025). In this action, the Court follows this "better view" and analyzes the motions under Rule 16(b)'s good cause standard only. *Cf. Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting 18 *Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011)).

4

(10th Cir. 2018) (citation omitted). The good cause requirement "may be satisfied, for example, if a [party] learns new information through discovery or if the underlying law has changed." *Gorsuch*, 771 F.3d at 1240. "'[G]ood cause' is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (alteration in original) (quoting 3 *Moore's Federal Practice* § 16.14 (3d ed. 2019)). "Another relevant consideration is possible prejudice to the party opposing the modification." *Id.* (citation omitted). "Mere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation" generally will not suffice. *Id.* at 989 (citation omitted).

### III.  ANALYSIS

    **A.  The Medical Defendants have shown good cause to amend their expert disclosures by adding Courtney Myers as an expert witness.**

The Medical Defendants request leave to amend their expert disclosures [Doc. No. 84] to include a rebuttal expert witness, Courtney Myers. [Doc. No. 115]. According to the Medical Defendants, they seek to add Mr. Myers as an expert witness to rebut the "eleventh-hour claim" expressed by Plaintiff's experts in their depositions "that a page in Plaintiff's medical records produced in discovery as TKHC 0067 was 'falsified.'" *Id.* at ¶¶ 8, 25. The Medical Defendants assert that two of Plaintiff's expert witnesses—Nurse Susan Minter and Dr. Craig A. Kennedy—opined during their depositions that TKHC 0067 was fraudulent, despite the fact that neither expert included this opinion in their

5

expert report. *Id.* ¶¶ 2, 4, 8, 17. Because these experts "surprised the Medical Defendants with previously undisclosed expert opinions well past the deadline" for either party to file expert witness lists and expert reports, the Medical Defendants seek leave to add Mr. Myers as a witness. *Id.* at 10. Mr. Myers, who has "expertise in analysis of electronic medical records systems," will reportedly "directly rebut both Nurse Minter and Dr. Kennedy's opinion that TKHC 0067 is fraudulent or was otherwise created after the fact." *Id.* at 5, 9.

Plaintiff opposes this request, arguing that the Medical Defendants have failed to show good cause to amend their final list of expert witnesses. [Doc. No. 117 at 2]. Plaintiff asserts that the Medical Defendants were aware of questions about TKHC 0067 since the January 30, 2025, deposition of Nurse Kimberly Stout, but they did not move to supplement the opinions of their expert, Nurse Linda Davis-Moon, to address these questions. *Id.* at 9. Further, Plaintiff argues that Mr. Myers "is an additional expert, not a rebuttal witness," as Plaintiff's "experts do not address or contest the technical matters [Myers] seeks to address." *Id.* Instead, Nurse Minter "questioned TKHC 0067 on professional correctional healthcare and EMR (electronic medical records) standards, not for alteration scanning or entry into records," and Dr. Kennedy "testified the validity of TKHC 0067 did not affect his opinion." *Id.* at 8–9.[2]

---

[2] Plaintiff's response requests "attorney fees, costs of this Motion and additional costs" incurred by deposing Mr. Myers. *Id.* at 12. However, "[a] request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1). Under the Local Civil Rules, "[a] response to a motion may not also include a motion or a cross-motion made by the responding party." LCvR7.1(c). If Plaintiff wishes to request fees, he must do so by motion, not by making such a request in a response brief.

6

The Medical Defendants have demonstrated good cause to amend their final list of expert witnesses by adding Mr. Myers as an expert witness. The Medical Defendants have shown that they could not have included Mr. Myers in their final list of expert witnesses because Plaintiff's experts did not express the opinion that TKHC 0067 was fraudulent until after the deadline for defendants to file their final list of expert witnesses had expired. Plaintiff's arguments to the contrary are unavailing. The line of questioning about TKHC 0067 at Nurse Stout's January 30, 2025, deposition would not have put the Medical Defendants on notice that Plaintiff's experts believe TKHC 0067 to be fraudulent. *See* [Doc. No. 117-1].

Further, considering the Medical Defendants' description of Mr. Myers's expected testimony, *see* [Doc. No. 115 at 9], he will not address "technical arguments that Ramirez's experts did not raise." [Doc. No. 117 at 9]. Nurse Minter testified during her deposition that she believes TKHC 0067 is falsified, [Doc. No. 115-3 at 3–4]; [Doc. No. 117-5 at 9–13], and in her supplemental expert report, Nurse Minter opines that TKHC 0067 "is fraudulent – it was not part of the original medical chart while Mr. Ramirez was incarcerated and was later added." [Doc. No. 115-7 at 6]. Dr. Kennedy testified in his deposition that he believes the timing of TKHC 0067 is fraudulent and that he "probably would" testify that Nurse Krista Dorscher is lying if she were to testify that she wrote notes on that form by hand on October 17, 2020. [Doc. No. 115-6 at 6–7]. Thus, Mr. Myers's testimony that "TKHC 0067 was created and uploaded on October 17, 2020, consistent with Nurse Dorscher's testimony," and, "based on the metadata, there is no

evidence that the document was altered or falsified after its initial upload" would rebut arguments raised by both Nurse Minter and Dr. Kennedy. [Doc. No. 115 at 9].

Thus, the Court GRANTS the Medical Defendants' Motion for Leave to Amend Their Expert Disclosures. [Doc. No. 115]. The Medical Defendants may amend their final list of expert witnesses [Doc. No. 84] to add Mr. Courtney Myers as a rebuttal expert witness. Mr. Myers may testify at trial consistent with his expert report.

> **B.    The defendants have shown good cause to add Janet Harrington as a witness, and Defendants KCDC and Jones have shown good cause to amend their exhibit list.**

All defendants seek leave to amend their final witness lists to add Officer Janet Harrington as a fact witness. The Medical Defendants request leave to amend because "Officer Harrington, and thus her potential role as a witness in this case, were unknown to the Medical Defendants at the time of the filing of their Final Witness List." [Doc. No. 115 at 10]. Similarly, Defendants KCDC and Jones seek leave to add Officer Harrington as a fact witness, noting that "she was only left off the original witness list because the copy of the logs originally received was inadvertently cut off, and it was not clear from the logs that she had been involved at all with Mr. Ramirez." [Doc. No. 120 at 6]. In addition, Defendants KCDC and Jones seek leave to amend their final exhibit list to include Officer Harrington's training file and the complete control center log that mentions Officer Harrington. *Id.* at 6–7. They argue there is good cause to amend their exhibit list because "Defendants had previously listed training files for multiple other witnesses that had contact with Mr. Ramirez, and only did not include Janet Harrington's training file because it had not been clear that she had contact with Mr. Ramirez." *Id.* at

8

7. As for the control center log, Defendants KCDC and Jones state that "the non-cut-off logs. . . . are the accurate logs, and Plaintiff's counsel received them as soon as [defense counsel] was aware of the issue of them being cut off." *Id.* at 6–7.

Plaintiff originally opposed the Medical Defendants' request to add Officer Harrington to their final witness list, arguing that the Medical Defendants "were, or should have been, aware of Janet Harrington and identified her long ago." [Doc. No. 117 at 2]. Plaintiff further argued he would be prejudiced by Officer Harrington's addition as a fact witness "because even if he deposes [her] at this late juncture there is no time left" to address any new evidence her deposition may uncover.[3] *Id.* at 10. Plaintiff raised the same argument in response to Defendants KCDC and Jones's motion, asserting that he "would be unfairly prejudiced" by the defendants' "late identification of Harrington" without extended deadlines and additional discovery.[4] [Doc. No. 122 at 10]. In a later-filed motion, Plaintiff states that he "wishes to withdraw his objection to adding lay witness, Janet Harrington," but "before dispositive and Daubert motions, [he] needs

---

[3] Plaintiff's response discusses the factors from *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co.*, 170 F.3d 985, 993 (10th Cir. 1999), that courts should consider when determining whether a violation of Federal Rule of Civil Procedure 26(a) is justified or harmless. [Doc. No. 117 at 11]. However, the relief sought by the Motion implicates Rule 16(b)(4), not Rules 26(a) or 37(c)(1), so *Woodworker's* is not applicable here.

[4] Plaintiff's response again requests "additional relief in the form of attorney fee and costs of this Motion." [Doc. No. 122 at 13]. Plaintiff also "wishes to add as an exhibit Harrington's complete KCDC employment file." *Id.* at 10 (emphasis omitted). Such requests and any requests made in Plaintiff's responses to motions are not proper and will not be considered as they are in violation of the Federal Rules of Civil Procedure and Local Civil Rules. *See supra* note 2.

9

additional time to conduct discovery into new evidence" Officer Harrington revealed during her deposition. [Doc. No. 123 at 2].

The defendants have shown good cause to amend their final lists of witnesses by adding Officer Harrington as a fact witness. The late identification of Officer Harrington was neither foreseeable nor the fault of the defendants. The defendants have diligently pursued discovery in this action, and they have shown that they alerted Plaintiff and his counsel to Officer Harrington's identity as soon as defense counsel obtained a copy of the complete control center log. The defendants have not failed to proceed with the normal course of discovery; rather, they uncovered new information during discovery and seek to address this new information. Additionally, given their diligence and the fact that the need to add the additional exhibits was neither foreseeable nor their fault, Defendants KCDC and Jones have also shown good cause to amend their final exhibit list to include the complete control center log and Officer Harrington's training file.

Accordingly, the Court GRANTS the Medical Defendants' Motion for Leave to Amend Their Final Witness List [Doc. No. 115] and Defendants KCDC and Jones's Motion to Amend Witness List and Exhibit List [Doc. No. 120]. The Medical Defendants may amend their final list of witnesses [Doc. No. 92] to include Officer Janet Harrington as a fact witness whom the Medical Defendants may call to testify at trial. Defendants KCDC and Jones may amend their final list of witnesses [Doc. No. 88] to include Officer Harrington as a fact witness whom they can call to testify at trial, and they may amend their final exhibit list [Doc. No. 87] to include the complete control center log and Officer Harrington's training file. The Medical Defendants' Motion for Leave to File a Reply to

Their Motion to Amend Their Expert Disclosures and Final Witness List [Doc. No. 118] is DENIED as moot.

    **C.    The Court sua sponte quashes Plaintiff's subpoenas for Officer Harrington's hospital records.**

After the defendants identified Officer Harrington, Plaintiff deposed her on May 28, 2025. During her deposition, Officer Harrington testified that "while employed at KCDC, she experienced a bout of high blood pressure, was treated by nursing staff at KCDC, and was directed by nursing staff at KCDC to either be escorted by van to the emergency room or to transport herself there immediately for further evaluation and treatment." [Doc. No. 121 at 2 (citation omitted)]. The day after Officer Harrington's deposition, Plaintiff issued two subpoenas—one to Integris Ponca City Hospital, Inc., the other to Blackwell HMA, LLC d/b/a Blackwell Regional Hospital and Stillwater Medical Blackwell—requesting "[a]ny and all ER Records for Janent [sic] Harrington . . . for 2020 and 2021." [Doc. No. 121-2]. According to Plaintiff, Officer Harrington "testified she needed to see the medical records to confirm [the] date of her blood pressure incident at Kay County Detention Center," so Plaintiff issued the subpoenas "to confirm the date" of the incident. [Doc. No. 124 at 2, 4].

The defendants jointly filed a Motion to Quash Plaintiff's Subpoenas Duces Tecum, arguing that the subpoenas are untimely because they "call for compliance outside the time permitted for discovery." [Doc. No. 121 at 5]. Defendants also seek to quash the subpoenas because they "seek irrelevant documents and appear intended to embarrass, annoy, or intimidate non-party witness Harrington." *Id.* at 6. Plaintiff argues

11

in response that the defendants do not have standing to challenge the subpoenas, which seek information about a non-party; the defendants did not confer before filing a discovery motion in violation of Local Civil Rule 37.1; and the subpoenas conform to the requirements of Federal Rules of Civil Procedure 26 and 45.[5] [Doc. No. 124 at 1, 3, 9–10].

Under Federal Rule of Civil Procedure 45(d)(3), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena" in certain circumstances, such as if the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). However, "[o]rdinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." 9A *Wright & Miller's Federal Practice & Procedure* § 2459 (3d ed. 2025) (footnote omitted); *accord Sines v. Darling Ingredients, Inc.*, No. MC 21-0026 JB, 2022 WL 1554824, at *20 (D.N.M. May 17, 2022) (collecting cases). Courts have found that parties have a personal right or privilege with regard to their employment files, banking documents, and health records. *Pub. Serv. Co. of Okla. v. A Plus, Inc.*, No. CIV-10-651-D, 2011 WL 691204, at *3 (W.D. Okla. Feb. 16, 2011) (collecting cases).

---

[5] Again, Plaintiff requests "additional relief in the form of attorney fee and costs of this Motion" [Doc. No. 124 at 11], but such a request is not proper in a response brief, *see supra* note 2.

12

Officer Harrington and the two hospitals are not parties to this action, so the defendants cannot quash the two subpoenas unless they have a personal right or privilege with regard to Officer Harrington's hospital records. Defendants assert that Officer Harrington's medical records are privileged under the Health Insurance Portability and Accountability Act ("HIPAA"). [Doc. No. 136 at 6]. But such a privilege is not a *personal* privilege—like the attorney-client privilege or a spousal privilege—held by any of the defendants. None of the defendants have a personal right or privilege to Officer Harrington's medical records, so they do not have standing to quash Plaintiff's subpoenas. Therefore, Defendants' Joint Motion to Quash Plaintiff's Subpoenas Duces Tecum [Doc. No. 121] is DENIED. As a consequence, Plaintiff's Motion Seeking Leave to File Supplemental Brief to Defendants' Joint Reply on Motion to Quash Subpoenas Duces Tecum [Doc. No. 139] is DENIED as moot.

However, the Court has the authority to *sua sponte* limit the extent of discovery if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(c)(iii). Under Rule 26(b)(1),

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b)(1). *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003).

The subpoenas Plaintiff issued to the two hospitals seek discovery that is disproportionate to the needs of this case. Officer Harrington testified during her deposition that nursing staff at KCDC treated her when she had a bout of high blood pressure while she was at work. Plaintiff argues that this testimony "demonstrates an entirely different standard of care between Detention Officers and prisoners." [Doc. No. 124 at 10]. However, any medical treatment Officer Harrington received at the hospital *after* she was seen by KCDC's nursing staff is irrelevant to the care she received at KCDC. Plaintiff asserts that the subpoenaed medical records are necessary "to confirm the date" of the blood pressure incident. *Id.* at 4. But the marginal relevance of the exact date of this incident is dwarfed by the burden imposed by subpoenaing two non-parties for the private medical records of a third non-party to this action. The discovery sought by these subpoenas wildly exceeds the scope of discovery permitted by Rule 26(b)(1). Accordingly, the Court *sua sponte* QUASHES the subpoenas issued by Plaintiff to non-parties Integris Ponca City Hospital, Inc., and Blackwell HMA, LLC d/b/a Blackwell Regional Hospital and Stillwater Medical Blackwell.

### D.     Plaintiff has not shown good cause to extend all deadlines by 60 days.

Plaintiff moves to extend all deadlines in the Modified Second Amended Scheduling Order [Doc. No. 114]—including the discovery deadline and the deadline to file dispositive and *Daubert* motions—by 60 days. [Doc. No. 123]. In his motion, Plaintiff requests "additional time to conduct discovery into new evidence [Officer Harrington] revealed in her May 28th deposition." *Id.* at 2. Plaintiff discusses two pieces

14

of "new evidence" he needs additional time to address. First, Plaintiff raises the hospital records he subpoenaed. Plaintiff notes that the defendants' "principal argument to quash [the subpoenas] was that the subpoenas were untimely and could not be completed by the Court's discovery deadline of June 3rd," so he "now seek[s] an extension of deadlines." *Id.* at 4. Second, according to Plaintiff, "Harrington testified that outside of any conversation with counsel, she had previously been told Ramirez had a stroke." *Id.* at 3. Because "Defendants deny Ramirez suffered a stroke on the date in question or any serious health event," Plaintiff "needs more time to conduct further discovery on admission made by Defendants previously unknown." *Id.*

The defendants oppose this request. Defendants KCDC and Jones argue that "the medical care that Janet Harrington received at a non-party medical facility is entirely irrelevant to this case." [Doc. No. 140 at 7]. As to discovery regarding "who told Janet Harrington that Mr. Ramirez had a stroke," these defendants' response notes that Harrington "testified that she only discussed this matter with the undersigned Jordan Miller and Plaintiff's counsel Max Deane." *Id.* "There is no secret witness that allegedly told Janet Harrington that Mr. Ramirez had a stroke," so "[a]ny request to extend discovery based on this proposition is entirely baseless." *Id.* The Medical Defendants raise similar arguments. They assert that the hospital records are "irrelevant" to Plaintiff's claims, and "to the extent that Plaintiff's motion is premised on an alleged need for additional discovery to learn the source of Harrington's understanding Ramirez may have had a stroke, such discovery would be unnecessary as the record reveals that information came from either counsel for KCDC or Plaintiff's counsel." [Doc. No. 141 at 3, 9].

15

Plaintiff has not demonstrated good cause to extend the deadlines in this case, including the now-expired discovery deadline. Plaintiff has already deposed Officer Harrington, and he chose not to depose the two members of the jail's administrative staff, Wade Locke and Chuck Creppel. The additional discovery arising from Officer Harrington's deposition is not relevant or proportional to the needs of this case. As noted above, discovery into Officer Harrington's health records exceeds the proper scope of discovery under Rule 26(b)(1), and the Court quashes Plaintiff's subpoenas for Officer Harrington's health records. The issue of who told Officer Harrington that Plaintiff suffered a stroke is not important enough to this litigation to justify the burden that reopening discovery would impose on the parties' and the Court's resources. *Cf.* Fed. R. Civ. P. 26(b)(1). Because the discovery Plaintiff seeks exceeds the scope of proper discovery, refusing to extend the discovery deadline does not create a substantial risk of unfairness to Plaintiff. In contrast, further delaying these proceedings to allow Plaintiff to pursue such irrelevant matters that are disproportionate to the needs of this case would prejudice the defendants.

For these reasons, the Court DENIES Plaintiff's Opposed Motion to Extend Remaining Deadlines. [Doc. No. 123]. The Court DENIES as moot Plaintiff's Request for Reply Brief. [Doc. No. 142].

IV. **CONCLUSION**

In sum, the Court GRANTS the Medical Defendants' Motion for Leave to Amend Their Expert Disclosures and Final Witness List [Doc. No. 115] and Defendants KCDC and Jones's Motion to Amend Witness List and Exhibit List [Doc. No. 120]. While the

Court DENIES Defendants' Joint Motion to Quash Plaintiff's Subpoenas Duces Tecum [Doc. No. 121], the Court *sua sponte* QUASHES the subpoenas issued by Plaintiff to non-parties Integris Ponca City Hospital, Inc., and Blackwell HMA, LLC d/b/a Blackwell Regional Hospital and Stillwater Medical Blackwell.

The Court DENIES Plaintiff's Opposed Motion to Extend Remaining Deadlines [Doc. No. 123], and DENIES as moot the Medical Defendants' Motion for Leave to File a Reply to Their Motion to Amend Their Expert Disclosures and Final Witness List [Doc. No. 118], Plaintiff's Motion Seeking Leave to File Supplemental Brief to Defendants' Joint Reply on Motion to Quash Subpoenas Duces Tecum [Doc. No. 139], and Plaintiff's Request for Reply Brief [Doc. No. 142]. This order resolves all pending motions in this action aside from Plaintiff's Motion to Determine Rule/Spoliation of Evidence [Doc. No. 94], which the Court will take up at a later date. An amended scheduling order to reset the jury trial docket and pretrial submission deadlines, including the deadline to file dispositive and *Daubert* motions, will follow the parties' joint status report, which the Court will order separately.[6]

IT IS SO ORDERED this 1st day of December 2025.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[6] The discovery deadline and deadline to file discovery motions have closed. Absent extraordinary circumstances, these deadlines will remain closed. [Doc. No. 114 ¶ 6] (setting a deadline of May 5, 2025, to file all discovery motions "absent extraordinary circumstances"). Without prejudging any future motions, the Court notes that it is unlikely to find extraordinary circumstances if a party files an untimely discovery motion regarding any issues the parties were aware of before the deadline's expiration or that could have been raised with the disputes in this order.